APPEAL NO. 21-13663-JJ

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

JARROD JOHNSON,

Appellee / Plaintiff,

v.

THE CITY OF DALTON, GEORGIA, ACTING THROUGH
ITS BOARD OF WATER, LIGHT, AND SINKING FUND COMMISSIONERS,
d/b/a DALTON UTILITIES,

Appellant / Defendant.

Appeal from the United States District Court
for the Northern District of Georgia
No. 4:20-cv-0008-AT

**RESPONSE IN OPPOSITION TO APPELLEE'S
MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION**

Lindsey B. Mann
E. Fitzgerald Veira
Brooks M. Smith (admitted *pro hac vice*)
J. Houston Shaner
Christopher J. Kelleher

TROUTMAN PEPPER
HAMILTON SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308-2216
Telephone: (404) 885-3000

Counsel for Appellant

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-4, the undersigned counsel for Appellant The City of Dalton, Georgia, Acting Through Its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities, hereby certifies that the following persons and entities have or may have an interest in the outcome of this appeal:

1.    3M Company (NYSE: MMM)

2.    Aladdin Manufacturing Corporation

3.    Americhem, Inc.

4.    Arrowstar, LLC

5.    Chem-Tech Finishers, Inc.

6.    The City of Dalton, Georgia, Acting Through Its Board of Water,
      Light and Sinking Fund Commissioners, d/b/a Dalton Utilities –
      Defendant-Appellant

7.    Color Express, Inc.

8.    Columbia Recycling Corp.

9.    Cory Watson, P.C. – Counsel for Plaintiff-Appellee

10.   Cycle Tex, Inc.

11.   Daikin America, Inc.

i

12.    Dalton-Whitfield Solid Waste Authority

13.    Davis, Gary A. – Counsel for Plaintiff-Appellee

14.    Davis & Whitlock, P.C. – Counsel for Plaintiff-Appellee

15.    DyStar, L.P.

16.    E.I. du Pont de Nemours and Company

17.    Engineered Floors, LLC

18.    Fibro Chem, LLC

19.    Herring, Nina Towle – Counsel for Plaintiff-Appellee

20.    IMACC Corporation

21.    INV Performance Surfaces, LLC

22.    JB NSD, Inc.

23.    Johnson, Jarrod – Plaintiff-Appellee

24.    Kelleher, Christopher J. – Counsel for Defendant-Appellant

25.    Lutz, III, Hirlye R. "Ryan"– Counsel for Plaintiff-Appellee

26.    Mann, Lindsey B. – Counsel for Defendant-Appellant

27.    MFG Chemical, LLC

28.    Milliken & Company

29.    Mohawk Carpet, LLC

30.    Mohawk Industries, Inc. (NYSE: MHK)

31.    Oriental Weavers USA, Inc.

32.  Polyventine LLC

33.  Secoa Technology, LLC

34.  Shaner, J. Houston – Counsel for Defendant-Appellant

35.  Shaw Industries, Inc.

36.  Shaw Industries Group, Inc.

37.  Smith, Brooks M. – Counsel for Defendant-Appellant

38.  Stone, Ryals D. – Counsel for Plaintiff-Appellee

39.  Stone, William S. – Counsel for Plaintiff-Appellee

40.  Tarkett USA, Inc.

41.  The Chemours Company (NYSE: CC)

42.  The Dixie Group, Inc. (NASDAQ: DXYN)

43.  The Stone Law Group – Trial Lawyers, LLC – Counsel for Plaintiff-Appellee

44.  Tapley, F. Jerome – Counsel for Plaintiff-Appellee

45.  Thompson, Brett C. – Counsel for Plaintiff-Appellee

46.  Totenberg, The Honorable Amy M. – District Judge, United States District Court for the Northern District of Georgia

47.  Troutman Pepper Hamilton Sanders LLP

48.  Veira, E. Fitzgerald – Counsel for Defendant-Appellant

49.  Watson, R. Akira – Counsel for Plaintiff-Appellee

50.    Whitlock, James S. – Counsel for Plaintiff-Appellee

The undersigned counsel hereby certifies pursuant to Eleventh Circuit Rule 26.1-3(b) that, other than as reflected above, no other publicly traded company or corporation has an interest in the outcome of this particular appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT.................................................................i

TABLE OF CONTENTS.......................................................................v

TABLE OF AUTHORITIES ............................................................... vii

INTRODUCTION ................................................................................1

ARGUMENT AND CITATIONS OF AUTHORITY ...........................2

I.    THE COLLATERAL ORDER DOCTRINE VESTS THIS COURT
WITH JURISDICTION TO IMMEDIATELY CONSIDER THE
MERITS OF DALTON UTILITIES' APPEAL ...........................3

II.   THE DISTRICT COURT'S ORDER DENYING DALTON
UTILITIES' SOVEREIGN IMMUNITY IS EFFECTIVELY
UNREVIEWABLE ON APPEAL ...............................................4

    A.    Municipal Sovereign Immunity Under Georgia Law Provides
Immunity from Suit................................................................5

        1.    Municipal Sovereign Immunity Is Co-Extensive with
State Sovereign Immunity Under Georgia Law ......................6

        2.    The Relocation of Municipal Sovereign Immunity in the
Georgia Constitution Does Not Change This Outcome ...........9

    B.    Plaintiff-Appellee's Remaining Arguments Are Intertwined
With the Merits of This Appeal.............................................12

        1.    Plaintiff-Appellee Concedes That His Argument
Requires the Court to Address the Merits of the
Underlying Legal Question.....................................................12

        2.    There Is No Categorical "Nuisance Exception" to
Municipal Sovereign Immunity ..............................................14

**TABLE OF CONTENTS**
**(continued)**

Page

C.    Plaintiff-Appellee's Pending Clean Water Act Claim Against
Dalton Utilities Is Irrelevant to This Analysis ...................................18

III.    DALTON UTILITIES' SOVEREIGN IMMUNITY IS
COMPLETELY SEPARATE FROM THE MERITS OF THE
UNDERLYING ACTION............................................................................19

IV.    DALTON UTILITIES' NOTICE OF APPEAL IS SUFFICIENT .............21

CONCLUSION ...................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Commissioners of Lowndes Cty. v. Mayor & Council of City of Valdosta*, 309 Ga. 899 (2020) .........................................................................6, 13

*Blinco v. Green Tree Servicing, LLC*,
366 F.3d 1249 (11th Cir. 2004) ...................................................5, 19

*Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund*,
425 F.3d 1087 (8th Cir. 2005) ...........................................................14

*Cameron v. Lang*,
274 Ga. 122 (2001) ............................................................................8

*Castleberry v. Goldome Credit Corp.*,
408 F.3d 773 (11th Cir. 2005) ...........................................................14

*City of Albany v. Stanford*,
347 Ga. App. 95 (2018) ...................................................................9, 15

*City of Savannah v. Jordan*,
142 Ga. 409 (1914) ............................................................................7

*City of Thomasville v. Shank*,
263 Ga. 624 (1993) .......................................................................15, 16

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949).............................................................3, 12, 20, 21

*Davis v. City of Augusta*,
942 F. Supp. 577 (S.D. Ga. 1996) .......................................................8

*Dep't of Transportation v. Mixon*,
--- S.E.2d ---, 2021 WL 4528939 (Ga. Oct. 5, 2021) ..........................7

*Gatto v. City of Statesboro*,
860 S.E.2d 713 (Ga. 2021) ........................................................*passim*

*Georgia Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc.*,
294 Ga. 593 (2014) .......................................................................13, 16, 17

*Gilbert v. Richardson*,
   264 Ga. 744 (1994) ........................................................................... 6

*Godfrey v. Georgia Interlocal Risk Mgmt. Agency*,
   290 Ga. 211 (2011) ..................................................................... 10, 11

*Green v. Graham*,
   906 F.3d 955 (11th Cir. 2018) ........................................................ 8

*Griesel v. Hamlin*,
   963 F.2d 338 (11th Cir. 1992) ................................................ *passim*

*Koehler v. Massell*,
   229 Ga. 359 (1972) ......................................................................... 8

*Lathrop v. Deal*,
   301 Ga. 408 (2017) ................................................................. *passim*

*McMahon v. Presidential Airways, Inc.*,
   502 F.3d 1331 (11th Cir. 2007) ................................................... 4, 5

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ...................................................................... 20

*Parker v. Am. Traffic Sols., Inc.*,
   835 F.3d 1363 (11th Cir. 2016) ......................................... 3, 4, 5, 20

*Primas v. City of Milledgeville*,
   296 Ga. 584 (2015) ......................................................................... 8

*Rivers v. City Council of Augusta*,
   65 Ga. 376 (1880) ........................................................................... 7

*Sheley v. Bd. of Pub. Ed. for City of Savannah*,
   233 Ga. 487 (1975) ..................................................................... 9, 10

*Swint v. Chambers Cty. Comm'n*,
   514 U.S. 35 (1995) .......................................................................... 3

*Town of Fort Oglethorpe v. Phillips*,
   224 Ga. 834 (1968) ................................................................... 15, 17

*Young v. Johnson*,
   359 Ga. App. 769 (2021) ...................................................................................10

**Statutes**

28 U.S.C. § 1291 ...............................................................................................2, 3

O.C.G.A. § 36-33-1............................................................................................10, 11

**Other Authorities**

Fed. R. App. P. 3(c)(1).............................................................................................21

Ga. Const. of 1983, Art. I, § II, ¶ IX ........................................................................9

Ga. Const. of 1983, Art I, § III, ¶ I ..........................................................................16

Ga. Const. of 1983, Art. IX, § II, ¶ IX ...............................................................9, 10

## INTRODUCTION

The viability of Plaintiff-Appellee's motion to dismiss turns on a straightforward legal question: whether municipal sovereign immunity under Georgia law provides immunity from suit or a defense to liability. If the former, then the District Court's erroneous conclusion that Defendant-Appellant The City of Dalton, Georgia, Acting Through Its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities ("Dalton Utilities") is not entitled to sovereign immunity from Plaintiff-Appellee's public nuisance claim is immediately appealable under the collateral order doctrine. As set forth below, Dalton Utilities, a municipal corporation, enjoys sovereign immunity that provides immunity from suit, not merely a defense to liability. Accordingly, the District Court's denial of Dalton Utilities' motion to dismiss on sovereign immunity grounds is immediately appealable.

Rather than address that straightforward legal question, Plaintiff-Appellee attempts to establish that Dalton Utilities is not entitled to sovereign immunity because of a so-called "nuisance exception" that is at the heart of Dalton Utilities' appeal and will be addressed in full in merits briefing in this case. In doing so, Plaintiff-Appellee presents the novel legal framework adopted by the District Court as settled law and argues that, in light of that holding, Dalton Utilities is not entitled to sovereign immunity as a matter of law and therefore Dalton Utilities'

1

appeal must be dismissed.  Not only does that circuitous argument beg the question that is the very foundation of this appeal—namely, whether the District Court's novel application of a categorical "nuisance exception" to municipal sovereign immunity constitutes reversible legal error—but it also ignores the threshold premise that the District Court's holding is immediately appealable because municipal sovereign immunity is immunity from suit, not liability, ***whether or not an exception to that immunity applies***.

Here, the District Court's denial of Dalton Utilities' motion to dismiss on sovereign immunity grounds is immediately appealable under the collateral order doctrine because Dalton Utilities enjoys immunity from suit.  Plaintiff-Appellee's arguments to the contrary do not take up this threshold question and should therefore be rejected.  The Court should deny Plaintiff-Appellee's motion and reach the merits of Dalton Utilities' appeal.

## ARGUMENT AND CITATIONS OF AUTHORITY

The Court of Appeals has jurisdiction to hear Dalton Utilities' appeal of the District Court's denial of Dalton Utilities' motion to dismiss under 28 U.S.C. § 1291 and the collateral order doctrine.  Here, the denial of Dalton Utilities' sovereign immunity is immediately reviewable because the protections of immunity will be irretrievably lost if the nuisance claim against Dalton Utilities is allowed to proceed to trial, and the applicability of such immunity can be

determined by this Court without considering any disputed questions of fact, thus making it completely separate from the merits of the underlying nuisance claim. Moreover, Plaintiff-Appellee's contention that a judge-made "exception" to municipal sovereign immunity changes this analysis is meritless. As such, the District Court's order is immediately appealable to this Court.

## I. The Collateral Order Doctrine Vests This Court with Jurisdiction to Immediately Consider the Merits of Dalton Utilities' Appeal.

Ordinarily, the Court of Appeals' jurisdiction is limited to appeals from "final decisions" of the district court. *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1367 (11th Cir. 2016) (citing 28 U.S.C. §1291). However, "a decision of a district court is appealable if it falls within 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Griesel v. Hamlin*, 963 F.2d 338, 340 (11th Cir. 1992) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). This procedural mechanism permitting immediate appeal of non-final orders "is best understood not as an exception to the 'final decision' rule laid down by Congress in § 1291, but as a 'practical construction' of it." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 41–42 (1995).

A non-final order falls within the scope of the collateral order doctrine if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1338 (11th Cir. 2007) (citation omitted). Plaintiff-Appellee concedes that the first element of this analysis is satisfied. *See* Mot. to Dismiss at 5. Because the District Court's denial of Dalton Utilities' sovereign immunity resolves an important issue completely separate from the merits of Plaintiff-Appellee's nuisance claim and is effectively unreviewable on appeal, the Court has jurisdiction to immediately consider Dalton Utilities' appeal.

## II. The District Court's Order Denying Dalton Utilities' Sovereign Immunity Is Effectively Unreviewable on Appeal.

An order denying sovereign immunity is effectively unreviewable on appeal from a final judgment if "state law defines the immunity at issue to provide immunity from suit rather than just a defense to liability." *Parker*, 835 F.3d at 1367; *see also Griesel*, 963 F.2d at 340 ("The crucial issue in our determination of whether . . . sovereign immunity is immediately appealable is whether the state sovereign immunity under Georgia law is an immunity from suit rather than simply a defense to substantive liability."). This element of the collateral order doctrine recognizes that when a sovereign enjoys immunity from suit, it is protected from bearing "the burden of litigation," which protection is "irretrievably lost" when

that immunity is denied.  *Parker*, 835 F.3d at 1367; *Griesel*, 963 F.2d at 340 (a sovereign's immunity from suit is "effectively lost if a case is erroneously permitted to go to trial.") (citation omitted); *McMahon,* 502 F.3d at 1339 (recognizing that immunities from suit "protect important interests that would be irrevocably lost if the holder of the immunity were erroneously required to stand trial").  Moreover, sovereign immunity "protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery."  *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004).

Accordingly, to determine whether the District Court's denial of Dalton Utilities' sovereign immunity is immediately appealable, the Court must first determine whether municipal sovereign immunity under Georgia law provides immunity from suit, rather than liability.  Because this question must be answered in the affirmative, the third element of the collateral order doctrine is satisfied.

### A.    Municipal Sovereign Immunity Under Georgia Law Provides Immunity from Suit.

Plaintiff-Appellee contends that Dalton Utilities cannot appeal the District Court's denial of Dalton Utilities' sovereign immunity because there are "distinct constitutional and statutory bases for municipal immunity under Georgia law" such that Dalton Utilities' sovereign immunity "is from liability only."  Mot. to Dismiss at 8.  Plaintiff-Appellee's argument is based on a fundamental misunderstanding of

the common-law and constitutional bases for sovereign immunity under Georgia law and draws an artificial distinction between state and municipal sovereign immunity that is contradicted by more than 200 years of applicable precedent.

### 1.    Municipal Sovereign Immunity Is Co-Extensive with State Sovereign Immunity Under Georgia Law.

The doctrine of sovereign immunity "'was imbedded in the common law of England' and adopted by Georgia as its own after the War for American Independence." *Bd. of Commissioners of Lowndes Cty. v. Mayor & Council of City of Valdosta*, 309 Ga. 899, 901 (2020) (quoting *Lathrop v. Deal*, 301 Ga. 408, 411 (2017)). At common law, sovereign immunity existed to provide broad protection from any suit such that "[t]he State could not, without its own express consent, be subjected to an action *of any kind*." *Lathrop*, 301 Ga. at 412 (citation omitted) (emphasis added). Accordingly, since at least 1784, sovereign immunity has served to "protect[ ] governments at *all levels* from unconsented-to legal actions," regardless of the claim alleged or relief sought. *Gilbert v. Richardson*, 264 Ga. 744, 745 (1994) (emphasis added).

The immunity afforded to the State at common law has long been extended to municipalities, which are likewise "afforded *immunity from civil liability akin to the immunity afforded to the State*." *Gatto v. City of Statesboro*, 860 S.E.2d 713, 716 (Ga. 2021) (emphasis added). Indeed, as early as 1880, the Georgia Supreme Court recognized that municipalities enjoy "the same immunity" as the

State when carrying out governmental functions because such acts "are deemed to be but the exercise of a part of the state's power." *Rivers v. City Council of Augusta*, 65 Ga. 376, 378 (1880); *see also City of Savannah v. Jordan*, 142 Ga. 409, 410–11 (1914) ("It seems to be well settled that where the municipality undertakes to perform for the state duties which the state itself might perform, but which have been delegated to the municipality . . . and in the exercise of such function under the department a private citizen is injured by the negligence of the servants of the department while engaged in such work, no cause of action arises against such municipality.").

As such, the immunity afforded to municipalities at common law was exactly the same as the immunity afforded to the State. In 1974, the voters of Georgia ratified a constitutional amendment that gave "constitutional status" to sovereign immunity. *Lathrop*, 301 Ga. at 420. This constitutionalization of sovereign immunity had the effect of "reserv[ing] constitutionally the common-law doctrine of sovereign immunity *as traditionally understood by Georgia courts*." *Dep't of Transportation v. Mixon*, --- S.E.2d ---, 2021 WL 4528939, at *2 (Ga. Oct. 5, 2021) (emphasis added).

Plaintiff-Appellee acknowledges—as he must—that the sovereign immunity afforded to the State is immunity from suit, rather than a defense to liability. Mot. to Dismiss at 6; *see also Griesel*, 963 F.3d at 341 ("[S]overeign immunity under

Georgia law is an immunity from suit"); *Green v. Graham*, 906 F.3d 955, 960 (11th Cir. 2018) (recognizing that Georgia "provide[s] for immunity from suit as a matter of state law."). The sovereign immunity afforded to municipalities at common law was, in turn, "akin to" and "the same" as that enjoyed by the State at common law. *Gatto*, 860 S.E.2d at 716. Therefore, the immunity from suit afforded to the State at common law necessarily extends to municipalities.

Consistent with this Constitutional framework, Georgia courts have routinely referred to municipal sovereign immunity as providing immunity ***from suit***. *See, e.g.*, *Primas v. City of Milledgeville*, 296 Ga. 584, 584 (2015) ("[U]nder the doctrine of sovereign immunity, a municipal corporation is ***immune from suit***"); *Koehler v. Massell*, 229 Ga. 359, 362 (1972) (recognizing that "municipalities are ***not legally compellable*** or liable to pay claims" absent an applicable legislative waiver of sovereign immunity); *Cameron v. Lang*, 274 Ga. 122, 126 (2001) ("The doctrine of sovereign immunity, also known as governmental immunity, protects ***all levels of governments*** from legal action unless they have waived their ***immunity from suit***."); *Davis v. City of Augusta*, 942 F. Supp. 577, 579 (S.D. Ga. 1996) (observing that "the Georgia Constitution

assumes the existence of a municipality's **immunity from suit** unless waived or restricted by the General Assembly of Georgia.").[1]

### 2. The Relocation of Municipal Sovereign Immunity in the Georgia Constitution Does Not Change This Outcome.

Plaintiff-Appellee argues that because municipal sovereign immunity is now preserved in a different section of the Georgia Constitution than the State's sovereign immunity, the scope of municipal sovereign immunity is divorced from that enjoyed by the State. Mot. to Dismiss at 8; *see also* Ga. Const. of 1983, Art. I, § II, ¶ IX; Ga. Const. of 1983, Art. IX, § II, ¶ IX. For several reasons, this is a distinction without a difference.

*First*, as noted above, it was the 1974 amendment to the Georgia Constitution of 1945 that reserved sovereign immunity for *all* levels of government and provided that "[n]othing contained herein shall constitute a waiver of the immunity of the State *from suit* . . . except to the extent of any waiver of immunity provided in this Constitution and such waiver or qualification of immunity as is now or may hereafter be provided by act of the General Assembly." *Sheley v. Bd. of Pub. Ed. for City of Savannah*, 233 Ga. 487, 487–88 (1975) (quoting Ga. L. 1973, pp. 1489–90) (emphasis added). As such, at the time of the 1974

---

[1] Further illustrating this point, Georgia courts have long observed that municipal sovereign immunity "is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case." *City of Albany v. Stanford*, 347 Ga. App. 95, 97 (2018).

constitutionalization of sovereign immunity, the sole constitutional provision reserving sovereign immunity for *all* levels of government provided that any such immunity was immunity "from suit." *Id*. Although the 1983 Georgia Constitution reorganized sovereign immunity such that municipal sovereign immunity was relocated to a separate section, it did not change the scope of sovereign immunity reserved under the constitution, and instead served as a mere "continuation" of "the constitutional reservation of the sovereign immunity that had been recognized by the Georgia courts since the Founding." *Lathrop*, 301 Ga. at 421.

*Second*, Plaintiff-Appellee wrongly contends that O.C.G.A. § 36-33-1 provides "the general statutory ***basis*** for municipal immunity" and makes "clear" that such immunity is "from liability only." Mot. to Dismiss at 8 (emphasis added). Article IX, Section II, Paragraph IX of the Georgia Constitution—not this code section—provides the "basis" for municipal immunity. *See, e.g.*, *Young v. Johnson*, 359 Ga. App. 769, 770 (2021) ("[M]unicipal corporations are immune from suit pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia"). This does not, however, render O.C.G.A. § 36-33-1 superfluous. Indeed, this statute is merely the embodiment of the legislature's power, granted via Article IX, Section II, Paragraph IX of the Georgia Constitution, to enact specific *waivers* of municipalities' immunity from suit. *See Godfrey v. Georgia Interlocal Risk Mgmt. Agency*, 290 Ga. 211, 214 (2011)

(recognizing that "only the General Assembly has the authority to enact a law that specifically provides for such a waiver" of municipal sovereign immunity, and any waiver must be "narrow" and "is solely a matter of legislative grace"). Thus, while the legislature has the authority to enact "narrow" waivers of municipal sovereign immunity, *id*.—indeed, its exercise of this power is reflected in two separate subsections of O.C.G.A. § 36-33-1—the legislature does not have the authority to alter the scope of sovereign immunity itself, and thus municipalities retain the same immunity from suit that they enjoyed at common law.

Finally, Plaintiff-Appellee wrongly contends that Dalton Utilities does not enjoy sovereign immunity "[b]ecause Georgia law does not expressly provide that municipalities are immune from suit for nuisance." Mot. to Dismiss at 9. This argument gets it exactly backward. As discussed below, Dalton Utilities is immune from suit *unless* that immunity is waived by the legislature or the constitution itself. Therefore, the fact that Georgia law does not address municipal nuisance liability supports, rather than undercuts, Dalton Utilities' argument because any such waiver of Dalton Utilities' immunity from suit must be expressly stated by the legislature. If the legislature truly intended to create a categorical waiver of municipal sovereign immunity for nuisance claims, it certainly could have done so. *Cf. Godfrey*, 290 Ga. at 216 ("[H]ad the General Assembly wished that the narrow waiver of sovereign immunity effectuated through GIRMA

11

encompass the regulations of OCGA § 33–7–11, it would have affirmatively specified so.").

The sovereign immunity afforded to Dalton Utilities under longstanding Georgia law is immunity from suit, rather than a defense to liability. As such, this Court has jurisdiction to hear Dalton Utilities' appeal. *Griesel*, 963 F.2d at 341 ("Because sovereign immunity under Georgia law is an immunity from suit, under the *Cohen* doctrine, we have jurisdiction over the district court's order denying summary judgment based on sovereign immunity under Georgia law.").

**B.    Plaintiff-Appellee's Remaining Arguments Are Intertwined With the Merits of This Appeal.**

Plaintiff-Appellee conflates the threshold jurisdictional question of whether Dalton Utilities enjoys immunity from suit with Plaintiff-Appellee's underlying legal argument that a so-called "nuisance exception" applies to Plaintiff-Appellee's claim against Dalton Utilities under the facts of this case. *See* Mot. to Dismiss at 5–9. In doing so, Plaintiff-Appellee puts the cart before the horse and improperly seeks resolution of the merits of the appeal through a motion to dismiss. Regardless, though, Plaintiff-Appellee's argument is incorrect.

**1.    Plaintiff-Appellee Concedes That His Argument Requires the Court to Address the Merits of the Underlying Legal Question.**

To resolve the merits of Plaintiff-Appellee's argument that the "nuisance exception" forecloses Dalton Utilities' sovereign immunity, the Court would have

to reach the merits of the underlying appeal.  Indeed, Plaintiff-Appellee readily acknowledges that "[r]esolution of the immunity question *requires a merits determination of the nuisance claim*."  Mot. to Dismiss at 10 (emphasis added). The Court thus would first have to reach (and agree with) the merits of Plaintiff-Appellee's underlying legal argument in this appeal—that Dalton Utilities' does not enjoy sovereign immunity from a non-takings-based nuisance claim—to find that Dalton Utilities cannot appeal the validity of this argument in the first place.

To reach this conclusion, the Court would also have to grapple with numerous merits-based issues, including "complicated questions" about cases that deviated from the common-law doctrine of sovereign immunity as traditionally understood by Georgia courts but were not overruled before Georgia voters ratified the constitutional amendment reserving sovereign immunity—including cases involving nuisance claims against municipalities—as well as issues about courts' authority to ever deviate from the common law.  *Gatto*, 860 S.E.2d at 719; *see also Georgia Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 601 (2014) ("Opinions of Georgia appellate courts dealing with the judicial application of sovereign immunity prior to the 1974 constitutional amendment are not applicable to claims against the State arising after the 1974 amendment because the 1974 amendment created an entirely new ball game with regard to sovereign immunity." (citation omitted)); *Bd. of Commissioners of Lowndes Cty.*, 309 Ga. at

13

904 n.2 (observing that because "in 1784 Georgia adopted the common law of England as of May 14, 1776, as its own as a general matter," it is "arguabl[e]" that courts "could not alter it at all" after 1784, and thus that any judge-made abrogations of the doctrine after 1784 are legal nullities). Given the complexities of these questions, Plaintiff-Appellee's merits arguments present issues that are more suitable for analysis in an appellate brief.[2]

> ### 2. There Is No Categorical "Nuisance Exception" to Municipal Sovereign Immunity.

On the merits, Plaintiff-Appellee's argument that "municipalities are never immune from suit for nuisance" is equally unavailing. *See* Mot. to Dismiss at 9. Every sovereign immunity analysis begins with the proposition that "the constitutional doctrine of sovereign immunity forbids our courts to entertain a lawsuit against the State without its consent." *Lathrop*, 301 Ga. at 408. Under the Georgia Constitution, such consent can be obtained in only two ways: (1) by a legislatively-enacted waiver; or (2) by the terms of the Georgia Constitution itself.

---

[2] For the reasons set forth herein, Plaintiff-Appellee's motion to dismiss the appeal should be denied. However, if the Court is not inclined to deny the motion to dismiss outright, Dalton Utilities respectfully submits that the Court should exercise its discretion to defer consideration of Plaintiff-Appellee's motion until the Court has had the benefit of merits briefing and oral argument on the complex legal issues that go to the heart of Dalton Utilities' underlying appeal. *See, e.g.*, *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779 n.4 (11th Cir. 2005) (recognizing court's authority to defer ruling on motion to dismiss appeal until merits of appeal were reached); *Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund*, 425 F.3d 1087, 1088 (8th Cir. 2005) (deferring consideration of motion to dismiss until appeal was briefed and argued).

*Stanford*, 347 Ga. App. at 97 ("[T]he Georgia Constitution confers sovereign immunity on municipalities, and any exception or waiver must be found in that same document or in a law passed by the General Assembly."); *Lathrop*, 301 Ga. at 424–45 (observing that any "exception" to sovereign immunity "must be found in the constitution itself, or in the statutory law.") (internal citation omitted). Absent a specific constitutional or statutory waiver, therefore, municipalities retain their immunity from suit as it existed at English common law.

In the case below and the instant motion, Plaintiff-Appellee's argument rests exclusively on a so-called "nuisance exception" to municipal sovereign immunity. First articulated by the Georgia Supreme Court in its 1993 decision in *City of Thomasville v. Shank*, 263 Ga. 624 (1993), the nuisance exception was represented to be a byproduct of the common-law notion that "[a] municipality like any other individual or private corporation may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or ministerial function." *Id*. at 624 (quoting *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 837–38 (1968)). Classifying this as an "exception" to municipal sovereign immunity, the Court observed that its holding was "based on the principle that a municipal corporation cannot, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose, ***without just and adequate***

*compensation being first paid*."   *Id*. at 624–25 (citation omitted) (emphasis added). In so holding, the *Shank* Court rejected the notion that, in accordance with the plain terms of the Georgia Constitution, only the legislature had the authority to enact a waiver of sovereign immunity because "in the case of nuisance we are dealing not with a waiver of but an exception to sovereign immunity." *Id*. at 308.

In 2004, the Supreme Court revisited *Shank* and, in doing so, significantly limited the application of the "nuisance exception" to municipal sovereign immunity. In *Georgia Department of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593 (2014), the Supreme Court recognized that although it was "denominated as an 'exception' in *Shank*, the rationale behind [the nuisance exception] is rooted in the concept that the government may not take or damage private property for public purposes without just and adequate compensation." *Id*. at 600 (citing Ga. Const. of 1983, Art I, § III, ¶ I). The Court thus held that the so-called "nuisance exception" recognized in *Shank* "was not an exception at all, but instead, a proper recognition that the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity *in such cases*." *Id*. (emphasis added). In other words, the constitutional prohibition on the government taking or damaging private property without providing just compensation prevented the Court from shielding the State from suit when the takings clause was implicated by a citizen's nuisance claim. *Id.*

Accordingly, *Sustainable Coast* reaffirmed the principle that any waivers of municipal sovereign immunity must come from the constitution itself or an act of the legislature because "if [courts] were to create exceptions to sovereign immunity, the exceptions could swallow the rule permitting ***only*** the General Assembly to do so." *Id*. (emphasis added); *see also Lathrop*, 301 Ga. at 424 ("In *Sustainable Coast*, we reaffirmed that the doctrine of sovereign immunity bars suits against the State . . . except to the extent that sovereign immunity is waived by the Constitution itself or the statutory law.").

Plaintiff-Appellee notably fails to point to a single constitutional or statutory provision permitting it to maintain a nuisance claim against Dalton Utilities that is divorced from the takings clause.[3]  The District Court found that omission to be irrelevant based on its erroneous conclusion that the Georgia Supreme Court in *Gatto* answered a complex question about the impact of the 1974 constitutionalization of sovereign immunity on the Court's pre-1974 decision in *Town of Fort Oglethorpe* when, in reality, the Court expressly stated that it "need not address these doubts and questions to resolve the case before us," thereby leaving resolution of that question for another day.  *Gatto*, 860 S.E.2d at 719; *cf.*

---

[3] The District Court also erroneously concluded *sua sponte* that Plaintiff-Appellee's nuisance claim implicated the takings clause, despite Plaintiff-Appellee having never made such an argument. *See* Mot. to Dismiss, Ex. 1 at 91.  As discussed more fully in Dalton Utilities' forthcoming merits brief, this holding is undercut by the plain language of the Third Amended Complaint and the law governing public nuisance claims.

Mot. to Dismiss, Ex. 1 at 85–86 (stating that the *Gatto* Court "directly confront[ed] this issue"). Far from being settled, whether Plaintiff-Appellee can maintain a nuisance claim against Dalton Utilities divorced from *any* constitutional or statutory waiver is a question warranting close judicial scrutiny. *See Lathrop*, 301 Ga. at 424–45 (observing that any "exception" to sovereign immunity "***must*** be found in the constitution itself, or in the statutory law.") (emphasis added). The Court should disregard Plaintiff-Appellee's broad-brushed and unsupported assertion that the "nuisance exception" defeats Dalton Utilities' sovereign immunity as a matter of law, which is itself irrelevant to the threshold question before this Court: whether Dalton Utilities enjoys immunity from suit sufficient to allow for immediate review of the District Court's order.

### C. Plaintiff-Appellee's Pending Clean Water Act Claim Against Dalton Utilities Is Irrelevant to This Analysis.

Plaintiff-Appellee argues in passing that, even if Dalton Utilities enjoys immunity from suit, Dalton Utilities will not receive "the protection from suit it seeks" because Plaintiff-Appellee's Clean Water Act (CWA) claim against Dalton Utilities remains pending. Mot. to Dismiss at 9. This argument misses the mark. *First*, as a practical matter, Plaintiff-Appellee fails to acknowledge that he is seeking to certify a class action with respect to the nuisance claim, but not the CWA claim. As such, if Plaintiff-Appellee's nuisance claim against Dalton Utilities is permitted to proceed, then Dalton Utilities will be subject to

burdensome and expensive proceedings that are entirely unrelated to the CWA claim, including class certification proceedings.    Because Dalton Utilities' sovereign immunity "protects [Dalton Utilities] not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial discovery," *Blinco*, 366 F.3d at 1252, Dalton Utilities would be subject to substantial burdens that would be irretrievably lost and could not be remedied in a post-judgment appeal.    *Second*, following Plaintiff-Appellee's argument to its logical conclusion, any future plaintiff could effectively shield her state-law claims against government entities from immediate appeal by alleging separate federal claims that fall beyond the scope of state sovereign immunity, thereby preventing the sovereign from taking a direct appeal under the collateral order doctrine so long as *any* federal claim remains pending.    Permitting this procedural gamesmanship would undercut the spirit of the collateral order doctrine.

### III.    Dalton Utilities' Sovereign Immunity Is Completely Separate from the Merits of the Underlying Action.

Plaintiff-Appellee also incorrectly contends that the question of Dalton Utilities' entitlement to sovereign immunity is inseparable from the merits of the underlying nuisance claim.    Mot. to Dismiss at 10–11.[4]    As the Supreme Court has

---

[4] Notably, if the Court determines that Dalton Utilities is entitled to immunity from suit, then the Court need not separately decide whether Dalton Utilities' sovereign immunity is intertwined with the merits of the underlying action.    *See Griesel*, 963

held, "[a]n appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). Instead, because such an order "conclusively determines" the purely legal question of whether a municipality is "entitled to immunity from suit," it necessarily decides "an important issue that is separate from the merits of the case." *Parker*, 835 F.3d at 1367. That is to say, whether Dalton Utilities is entitled to immunity from suit for Plaintiff-Appellee's nuisance claim "is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Forsyth*, 472 U.S. at 527–28.

To sidestep this argument, Plaintiff-Appellee raises an argument that again impermissibly presupposes that the District Court's unfounded expansion of the municipal nuisance doctrine was correct. *See* Mot. to Dismiss at 10–11. In other words, for the Court to find that Dalton Utilities' sovereign immunity turns on "numerous factual questions," the Court must first conclude that the framework adopted by the District Court—which relied on pre-1974 caselaw that arguably did not survive the constitutional reservation of sovereign immunity, *see supra* § II(B)(1)—was not made in error. This argument begs the question that is the very foundation of this appeal. But as will be shown in Dalton Utilities' merits briefing,

F.2d at 340 (recognizing that immunity from suit under Georgia law "satisfies all of the *Cohen* factors.").

the District Court erred in reaching this conclusion, and the fact-intensive framework Plaintiff-Appellee now insists is required in municipal nuisance claims is irrelevant to the threshold question of Dalton Utilities' immunity from suit.

## IV.    Dalton Utilities' Notice of Appeal Is Sufficient.

Finally, Plaintiff-Appellee briefly takes aim at the precedent cited in Dalton Utilities' notice of appeal.[5]   Mot. to Dismiss at 11–12.   Tellingly, however, Plaintiff-Appellee does not point to *any* cases in which this Court has dismissed a municipality's appeal based on any of the grounds raised in the instant motion. Instead, Plaintiff-Appellee merely attempts to distinguish the cases cited in Dalton Utilities' Notice of Appeal.   However, for the reasons discussed above, Dalton Utilities' immunity in this case is immunity from suit, rather than a defense to liability, and thus this Court's prior discussions of the impact of a sovereign's immunity from suit on the *Cohen* factors are not simply relevant but controlling.

## CONCLUSION

As a municipality, Dalton Utilities enjoys immunity from suit, not liability; consequently, the District Court's order denying Dalton Utilities the benefit of that sovereign immunity is immediately appealable.   To avoid having this Court review

---

[5] Although it is unclear, to the extent Plaintiff-Appellee is attempting to argue that Dalton Utilities' Notice of Appeal itself was somehow deficient, this argument fails.   As Federal Rule of Appellate Procedure 3(c)(1) makes clear, a notice of appeal must identify three things: (1) the party taking the appeal; (2) the order being appealed; and (3) the court to which the appeal is taken.   Dalton Utilities' Notice of Appeal satisfies all three criteria.  *See* ECF No. 650.

the District Court's order, Plaintiff-Appellee repeats many of the same legal errors first propounded by the District Court, presents them to the Court as settled law, and circuitously argues that Dalton Utilities' appeal is premature based solely on Plaintiff-Appellee's contention that the District Court's legal conclusion was correct. For all of the reasons stated above, this Court has jurisdiction to hear Dalton Utilities' appeal.

Respectfully submitted, this 12th day of November, 2021.

**TROUTMAN PEPPER**
**HAMILTON SANDERS LLP**

*/s/ Lindsey B. Mann*
Lindsey B. Mann
lindsey.mann@troutman.com
E. Fitzgerald Veira
fitzgerald.veira@troutman.com
Brooks M. Smith (admitted *pro hac vice*)
brooks.smith@troutman.com
J. Houston Shaner
houston.shaner@troutman.com
Christopher J. Kelleher
chris.kelleher@troutman.com
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
404-885-3000

*Counsel for Appellant The City of Dalton, Georgia, Acting Through Its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because this brief contains 5,109 words, excluding the parts of the brief exempted by Eleventh Circuit Rule 32-4.

This 12th day of November, 2021.

*/s/ Lindsey B. Mann*
Lindsey B. Mann
lindsey.mann@troutman.com

*Counsel for Appellant The City of Dalton, Georgia, Acting Through Its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities*

## CERTIFICATE OF SERVICE

By signature below, counsel certifies that the foregoing RESPONSE IN OPPOSITION TO APPELLEE'S MOTION TO DISMISS APPEAL FOR LACK OF JURISDICTION was electronically filed with the Clerk of Court using the ECF system.

This 12th day of November, 2021.

/s/ Lindsey B. Mann

Lindsey B. Mann
lindsey.mann@troutman.com

*Counsel for Appellant The City of Dalton, Georgia, Acting Through Its Board of Water, Light and Sinking Fund Commissioners, d/b/a Dalton Utilities*