[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13663

_____

JARROD JOHNSON,
Individually, and on Behalf of a Class of persons
similarly situated,

Plaintiff-Appellee,

*versus*

3M COMPANY, et al.,

Defendants,

WATER, LIGHT, AND SINKING FUND COMMISSION
OF CITY OF DALTON,

2                    Opinion of the Court                    21-13663

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:20-cv-00008-AT

————————————————

Before LUCK, BRASHER, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

Dalton, Georgia, which has been called the "carpet capital of the world," boasts on its website that the city is "unrivaled in its production of carpet."[1]  Since more than ninety percent of the world's carpet comes from manufacturers in and around Dalton, it would be hard to argue with that.  But the title and boast say nothing about any pollution resulting from all of that carpet production. The allegations in this lawsuit do.

Plaintiff Jarrod Johnson alleges that toxic chemicals used during the carpet manufacturing process have been allowed to seep into the rivers that supply drinking water to communities near Dalton, including Rome, Georgia and the rest of Floyd County.  On behalf of himself and a proposed class of water subscribers and

———————————

[1] See Dalton, Carpet Center, Dalton, Ga., https://www.daltonga.gov/community/page/dalton-carpet-center (last visited Dec. 19, 2022).

ratepayers, he sued Dalton Utilities, a municipal corporation that operates Dalton's wastewater treatment system, for violating the Clean Water Act and for creating a public nuisance. His lawsuit claims that Dalton Utilities has caused the City of Rome's domestic water supply to be contaminated with dangerously high levels of toxic chemicals. As the case comes to us, the question is whether Dalton Utilities is entitled to municipal immunity from Johnson's nuisance abatement (injunctive relief) claim. The answer is that it is not.

## I.

The facts, as alleged in the third amended complaint (the operative one) and which we assume to be true for present purposes, *see McGroarty v. Swearingen*, 977 F.3d 1302, 1306 (11th Cir. 2020), are these.

More than ninety percent of the world's carpet comes from manufacturers in and around Dalton. During the manufacturing process the facilities use man-made chemicals called per- and polyfluoroalkyl substances (PFAS) that repel oil and water and, when applied to carpets, make them resistant to stains. But the chemical properties that make PFAS ideal for carpet manufacturing also make them toxic and everlasting (hence the nickname "forever chemicals"). When released into the environment PFAS do not break down, and they tend to collect and spread in water. They have been linked to many adverse health effects, including developmental defects in fetuses, cancer, immunotoxicity, thyroid disease, ulcerative colitis, and high cholesterol.

After the carpet manufacturing facilities use PFAS, they discharge industrial wastewater containing dangerously high levels of the chemicals directly into Dalton's wastewater treatment system. That system is owned and operated by Dalton's Board of Water, Light and Sinking Fund Commissioners, which does business as Dalton Utilities. Dalton Utilities collects and treats the wastewater, then pumps it to a 9,800-acre Riverbend Wastewater Land Application System where it is sprayed across the surface of the land. Instead of degrading during treatment, the PFAS accumulate in the Land Application System and flow into the neighboring Conasauga River and its tributaries. After that, they travel downstream to the Oostanaula River, the primary source of Rome, Georgia's drinking water, exposing its residents to "dangerously high levels" of the chemicals.

In 2016 the City of Rome implemented an emergency filtration process to remove some PFAS from its water supply. To cover the cost of this emergency filtration system and to pay for a new, permanent one, the City imposed a surcharge on the price of water for all ratepayers. The City estimates that the rate will increase by at least 2.5% each year for the foreseeable future.

Johnson, a Rome resident, filed this action in the Superior Court of Floyd County in 2019 on behalf of himself and a proposed class of water subscribers and ratepayers who are harmed by the contamination of their drinking water and the payment of surcharges. He named as defendants various chemical suppliers and carpet manufacturers and alleged state law claims for tortious

conduct, public nuisance, and nuisance abatement.  The case was later removed to the Northern District of Georgia under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Johnson brought Dalton Utilities into the case with his first amended complaint, which alleged a Clean Water Act claim against it.  That first amended complaint also alleged a Clean Water Act claim against the Dalton/Whitfield Regional Solid Waste Authority and reorganized the state law tort claims, adding a negligence *per se* claim against the carpet manufacturers and chemical suppliers.  Then Johnson amended his complaint a second time to correct misnomers and clarify which chemical supplier defendants are subject to his negligence *per se* claim.  That was followed by a third amended complaint, which added some defendants, substituted others, and updated the Clean Water Act allegations.  He also asserted in it public nuisance and nuisance abatement claims against Dalton Utilities.  His third amended complaint generally alleges that the contamination of Rome's drinking water endangers his health, damages his property, interferes with his use and enjoyment of his property, and increases the price of his water.  It seeks compensatory and punitive damages and injunctive relief.

Dalton Utilities moved to dismiss the third amended complaint for failure to state a claim.  Relevant to this appeal, the motion asserted that Dalton Utilities is entitled to municipal

immunity[2] from Johnson's nuisance abatement claim.  Relying on the Georgia Supreme Court's *Sustainable Coast* decision, the motion contended that municipalities are immune from a nuisance claim unless the claim seeks monetary relief for the taking or damaging of private property.  *See Ga. Dep't of Nat. Res. v. Ctr. for a Sustainable Coast, Inc.*, 755 S.E.2d 184 (Ga. 2014).  Dalton Utilities asserted that Johnson's nuisance claim sought only injunctive relief for personal injury, and as a result municipal immunity applied to that claim against Dalton Utilities.

After a hearing, the district court denied Dalton Utilities' motion to dismiss Johnson's nuisance abatement claim on municipal immunity grounds.  Relying on *Gatto v. City of Statesboro*, 860 S.E.2d 713 (Ga. 2021), the court found that "as it stands now, [Georgia] law allows for a nuisance claim against a municipality for injury to property (or the use and enjoyment thereof) or personal injury."  And the court expressed its view that Johnson had adequately alleged a nuisance claim against Dalton Utilities both for injury to property and for personal injury.  This is Dalton Utilities' interlocutory appeal of the district court's order.

While this appeal was pending, Johnson filed with Dalton Utilities' consent a fourth amended complaint in the district court.

---

[2] Although the parties and the district court refer to "sovereign immunity" or "municipal sovereign immunity," we follow the lead of the Georgia Supreme Court and use "municipal immunity" to refer to the governmental immunity afforded to cities.  *Gatto v. City of Statesboro*, 860 S.E.2d 713, 715 n.1 (Ga. 2021).

This latest amended complaint makes two changes to the claims against Dalton Utilities: it adds another Clean Water Act claim, and it withdraws the public nuisance claim that sought damages. But it leaves the nuisance abatement claim seeking injunctive relief intact, and that's the only claim at issue in this appeal.

## II.

Johnson has moved to dismiss this appeal, contending that we lack jurisdiction because the district court's order denying Dalton Utilities' motion to dismiss the nuisance abatement claim is not a final order. An order denying a motion to dismiss is not a final decision, and we lack jurisdiction to review it "unless it is otherwise made appealable by statute or jurisprudential exception." *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1367 (11th Cir. 2016) (quotation marks omitted); *see also* 28 U.S.C. § 1291 (providing that the federal courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States"). The only exception that could conceivably apply here is the collateral order doctrine. "That doctrine permits the immediate appeal of an interlocutory order if it (1) conclusively determines an important issue that is both (2) completely separate from the merits of the case and (3) effectively unreviewable on appeal from a final judgment." *Parker*, 835 F.3d at 1367.

Under the collateral order doctrine, an order denying state sovereign immunity "is immediately appealable if state law defines the immunity at issue to provide immunity from suit rather than just a defense to liability." *Id.* Under Georgia law state sovereign

immunity is immunity from suit, and an order denying state sovereign immunity is immediately appealable.  *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir. 1992).

We have not decided whether the denial of a motion to dismiss based on Georgia municipal immunity, as distinguished from Georgia state immunity, is immediately appealable.  Dalton Utilities says that there is no meaningful difference for interlocutory appeal purposes because, like Georgia state sovereign immunity, Georgia municipal immunity is immunity from suit.  We agree. *See Primas v. City of Milledgeville*, 769 S.E.2d 326, 328 (Ga. 2015) ("[U]nder the doctrine of sovereign immunity, a municipal corporation is immune *from suit* unless its immunity is waived by the General Assembly . . . .") (emphasis added); *Koehler v. Massell*, 191 S.E.2d 830, 833 (Ga. 1972) (referring to the legislature having the authority to delegate to municipalities "the power and authority to waive their immunity *from suit* on claims arising because of negligence in the performance of [their] governmental functions") (emphasis added).

Johnson argues that the collateral order doctrine does not apply because the issue of Dalton Utilities' immunity is inseparable from the merits of his nuisance abatement claim.  But a question of immunity *is* separate from the merits of the underlying action for purposes of the collateral order doctrine, "even though a reviewing court must consider the plaintiff's factual allegations in resolving the immunity issue."  *Mitchell v. Forsyth*, 472 U.S. 511, 529 (1985). Any overlap of the immunity issue with the merits of the nuisance

abatement claim, under these particular circumstances, does not affect our appellate jurisdiction.

We also must consider what effect (if any) Johnson's fourth amended complaint has on our jurisdiction. *See Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022) (requiring that we ensure "up until the moment our mandate issues" that intervening events have not divested us of jurisdiction by mooting the appeal).

The filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case *involved in the appeal.*" *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (emphasis added). For that reason, we have held that if a proposed amended complaint would "alter[] the status of the case" on interlocutory appeal, the district court lacks jurisdiction to allow the plaintiffs to file it. *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003).

Even so, "an interlocutory appeal does not completely divest the district court of jurisdiction." *Id.* "The district court has authority to proceed forward with portions of the case not related to the claims on appeal." *Id.* (quoting *May v. Sheahan*, 226 F.3d 876, 880 n.2 (7th Cir. 2000)) (alteration omitted); *see also Wooten v. Roach*, 964 F.3d 395, 403 (5th Cir. 2020). The key point is that Johnson's fourth amended complaint does not change the nuisance abatement allegations on which Dalton Utilities' municipal immunity defense is based. It leaves the status of this appeal of the immunity order unaffected. The notice of appeal divested the

district court of jurisdiction over only one claim in a single count, and that is the nuisance abatement (injunctive relief) claim against Dalton Utilities.

## III.

Having determined that we have jurisdiction to decide Dalton Utilities' appeal, we turn to the remaining issue: whether under Georgia law a municipality has immunity from a nuisance claim for personal injury.[3] Relying on *Sustainable Coast*, Dalton Utilities contends that municipalities may be liable for only one kind of nuisance claim: the kind that involves a taking of private property. And according to Dalton Utilities, that's not the kind of nuisance claim Johnson has asserted. We review *de novo* a district court's denial of sovereign immunity at the motion to dismiss stage. *See Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1224 (11th Cir. 1999).

In *Sustainable Coast* the Georgia Supreme Court held that the only way state sovereign immunity can be waived is if the Georgia legislature does it. 755 S.E.2d at 188. In doing so it overruled one of its earlier decisions, *IBM v. Evans*, 453 S.E.2d 706 (Ga. 1995), in part because *Evans* "wrongly recognized" a judicially

---

[3] In the district court, Dalton Utilities argued that under *Sustainable Coast* municipalities are immune from nuisance claims that seek either monetary damages for personal injury or injunctive relief. It now argues only that *Sustainable Coast* shields municipalities from nuisance claims for personal injury (as opposed to property damage).

created "exception to sovereign immunity for suits seeking injunctive relief to restrain an illegal act."  755 S.E.2d at 190.

In reaching its holding in *Sustainable Coast,* the Georgia Supreme Court acknowledged that in the past it had recognized what it had called a "nuisance exception" to sovereign immunity, which is the "longstanding principle that a municipality is liable for creating or maintaining a nuisance which constitutes either a danger to life and health or a taking of property." *Id.* (quotation marks omitted).  It clarified that: "the 'nuisance exception' . . . was not an exception at all, but instead, a proper recognition that the [Georgia] Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity in such cases." *Id.*  The court recognized that its past application of what it had then called the "nuisance exception" to sovereign immunity did not mean the court had authority to create exceptions not recognized by the Georgia Constitution.  *Id.*

According to Dalton Utilities, *Sustainable Coast*'s discussion about nuisance claims and sovereign immunity was inextricably linked to the Georgia Constitution's just compensation provision. It argues that the decision implicitly limited municipal liability for nuisance to claims that the municipality took or damaged private property.[4]  That *Sustainable Coast*-based argument might have

─────────────

[4] *Sustainable Coast* involved state sovereign immunity, not municipal immunity.  Though state and municipal sovereign immunity may not be coextensive, *see Gatto*, 860 S.E.2d at 716 & n.3, the Georgia Supreme Court recently explained that "the scope of whatever waiver" the just compensation

more appeal if it were the only decision on the subject. But five years after *Sustainable Coast*, the Georgia Supreme Court issued its *Gatto* decision. In it the court reaffirmed the common law principle that municipalities may be held liable not only for nuisances that take or damage property but also for nuisances that threaten life or health. *See Gatto*, 860 S.E.2d at 716.

The court agreed to hear the *Gatto* case "to consider the contours of municipal immunity with respect to nuisance claims." *Id.* at 715 (footnote omitted). Its decision in that case gave a detailed history of the "nuisance exception," which it renamed the "nuisance doctrine." *See id.* at 716–20. For our purposes the most important part of the helpful history lesson in the *Gatto* opinion is this: while a municipality's nuisance liability was traditionally limited to injuries to the physical condition of the plaintiff's property or his use and enjoyment of it, the Georgia Supreme Court abandoned that limitation in 1968 in *Town of Fort Oglethorpe v. Phillips*, 165 S.E.2d 141 (Ga. 1968). *See Gatto*, 860 S.E.2d at 718–19.

In *Phillips* the Georgia Supreme Court had concluded that the plaintiff stated a valid nuisance claim against a city for its failure to fix a faulty traffic light, which caused the plaintiff's injuries. 165 S.E.2d at 144. That decision expanded the scope of municipal liability for nuisance claims "to include personal injuries beyond those tied to the plaintiff's property." *Gatto*, 860 S.E.2d at 719.

provision provides "is not limited to the sovereign immunity of the State, but extends to . . . municipal immunity," *Dep't of Transp. v. Mixon*, 864 S.E.2d 67, 70 n.2 (Ga. 2021).

That was the last word on the subject from the Georgia Supreme Court before the Georgia Constitution was amended in 1974 to constitutionalize the common law doctrine of sovereign immunity and the decisions involving it.

The 1974 Georgia constitutional amendment removed from the court its authority to expand (or contract) the sovereign immunity doctrine's scope in the future, effectively freezing in place Georgia sovereign immunity law. *See id.* at 720–21. As the Georgia Supreme Court summarized it in *Gatto*, the amendment "preserved the scope of [sovereign immunity] as it existed at common law," which included *Phillips*, and "rendered it unmodifiable by the courts." *Id.* at 721. The development convinced the Georgia Supreme Court that it "now has no authority to alter these outer limits of municipal nuisance liability." *Id.* at 720–21.

The *Sustainable Coast* decision in 2014 cast some doubt on the 1968 *Phillips* decision by making "clear" that, because the Georgia Constitution gives the legislature the sole authority to waive sovereign immunity, "judge-made exceptions are unauthorized and have no validity."[5] *Gatto*, 860 S.E.2d at 717–18 (quotation

---

[5] *Sustainable Coast* also muddied the waters somewhat by stating that "[o]pinions of Georgia appellate courts dealing with the judicial application of sovereign immunity prior to the 1974 constitutional amendment are not applicable to claims against the State arising after the 1974 amendment . . . ." 755 S.E.2d at 190–91 (quotation marks omitted). But in a later decision, the Georgia Supreme Court clarified that the "1974 constitutional amendment did not change the *scope* of sovereign immunity; it merely gave it a new constitutional *status* that put changes beyond the reach of the courts." *Bd. of Comm'rs of Lowndes*

14                    Opinion of the Court                    21-13663

marks omitted).  But the Georgia Supreme Court has cited *Phillips* favorably and followed it even after the 1974 constitutional amendment, *see, e.g.*, *City of Bowman v. Gunnells*, 256 S.E.2d 782, 784 (Ga. 1979) (relying on *Phillips* to determine "what it takes to constitute a nuisance" that would subject a municipality to liability); *Mayor of Savannah v. Palmerio*, 249 S.E.2d 224, 229–30 (Ga. 1978) (relying on *Phillips* for the principle that a municipality can be held liable for creating "a nuisance dangerous to life or health"), which is some evidence that *Phillips* stands as common law that survived the 1974 amendment.  *See also Gatto*, 860 S.E.2d at 171 (explaining that in *Palmerio* and *Gunnells*, the court "attempted to elucidate parameters for [*Phillips*'] more expansive notion of municipal liability").

In any event, as the Georgia Supreme Court stressed in *Gatto*, the "nuisance exception" is not an exception at all but instead a "doctrine" that is still used to "evaluat[e] whether municipal liability may be imposed in a given case."  *Id.* at 718; *see also Beasley v. Ga. Dep't of Corr.*, 861 S.E.2d 106, 111 n.14 (Ga. Ct. App. 2021) (explaining that under Georgia Supreme Court precedent "there may be recovery for personal injuries sustained by the

_____

*Cnty. v. Mayor of Valdosta*, 848 S.E.2d 857, 860, 861 n.2 (Ga. 2020).  The court also noted that "the sovereign immunity preserved by the 1974 amendment and the common law doctrine *as previously understood by Georgia courts* were one and the same."  *Id.* at 860 (emphasis added).  The court's pre-1974 case law is not "irrelevant"; instead, "it is the only way that we can discern the nature of the sovereign immunity that the Georgia Constitution now preserves."  *Id.* at 861 n.2.

maintenance of a nuisance in the municipality context under certain circumstances").

The Georgia Supreme Court's latest word in *Gatto* controls us when it comes to Georgia law. *See Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) ("The final arbiter of state law is the state supreme court, which is another way of saying that [a state's] law is what the [state's] Supreme Court says it is."). And according to *Gatto*, the 1974 amendment preserved *Phillips*' removal of municipal immunity for nuisance claims involving personal injury. *See Gatto*, 860 S.E.2d at 721 (citing *Bd. of Comm'rs of Lowndes Cnty. v. Mayor of Valdosta*, 848 S.E.2d 857, 859–61, 861 n.2 (Ga. 2020)). We are bound to follow, and do follow, the Georgia Supreme Court's holdings in *Gatto* and *Phillips* about Georgia law on municipal immunity.

At oral argument, counsel for Dalton Utilities conceded that if *Phillips* is still good law, Johnson has properly alleged a *Phillips* kind of nuisance claim for personal injury.[6] We agree. Municipal

---

[6] In its briefs to this Court, Dalton Utilities argued that even under *Phillips*' expanded version of the nuisance doctrine, Johnson has failed to state a nuisance claim because he has not alleged that Dalton Utilities created or maintained a nuisance. That contention may be outside the scope of the interlocutory appeal, and Dalton Utilities did not press the matter in the district court. When asked at oral argument, "Did they properly allege a *Phillips* kind of claim, assuming *Phillips* is good law, all of it?" Dalton Utilities answered: "Assuming *Phillips* is good law, yes, Your Honor, I think they did." *See Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997).

immunity does not shield Dalton Utilities from Johnson's nuisance abatement claim.

## IV.

Johnson's motion to dismiss Dalton Utilities' appeal for lack of jurisdiction is **DENIED**.

The district court's order denying Dalton Utilities' motion to dismiss Johnson's nuisance abatement claim on municipal immunity grounds is **AFFIRMED**.